2 So.2d 629

STATE v. VERNON.

No. 36130.

April 28, 1941.

Rehearing Denied May 26, 1941.

Eugene Stanley, Atty. Gen., Niels F. Hertz, Sp. Asst. Atty. Gen., Bolivar E. Kemp, Jr., Dist. Atty., of Amite, and Joseph M. Blache, Jr., Asst. Dist. Atty., and Nathan B. Tycer, both of Hammond, for the State, plaintiff and appellee.

Ellis & Bostick, of Amite, for defendant and appellant.

ROGERS, Justice.

The defendant was indicted for manslaughter, found guilty, and sentenced to imprisonment for not less than one year nor more than three years. Defendant appealed on the grounds set forth in nine bills of exception.

The first bill of exception is abandoned. The second and third bills of exception relate to the same subject matter. After several witnesses had testified relative to certain threats made by the deceased against the defendant, Wade Neal was called as a witness by defendant for the purpose of proving that the deceased had made other threats which had not been communicated to the defendant. On objection by the State, this testimony was excluded by the trial judge. Defendant complains that the ruling was erroneous.

No one has the right to kill another simply because the latter has made some threats against him. State v. Labuzan, 37 La.Ann. 489. The general rule is that in a homicide case threats are not admissible for the purpose of justifying the homicide unless there is something in the evidence which tends to make out a case of self-defense. Gilmore v. State, 141 Ala. 51, 37 So. 359; Steele v. State, 33 Fla. 348, 14 So. 841; Hinson v. State, 66 Miss. 532, 6 So. 463; State v. Byrd, 121 N.C. 684, 28 S.E. 353.

■ Threats are admissible as bearing upon the issue whether the deceased or the accused was the aggressor in the difficulty in which the killing occurred. Wiggins v. Utah, 93 U.S. 465, 23 L.Ed. 941; Brown v. State, 55 Ark. 593, 18 S.W. 1051; Lee v. State, 72 Ark. 436, 81 S.W. 385; Bethune v. State 49 Tex.Cr.R. 166, 90 S.W. 1014.

■ Uncommunicated threats are admissible on an issue of fact of whether the killing was malicious or in self-defense. Stokes v. People, 53 N.Y. 164, 13 Am.Rep. 492.

■ Uncommunicated threats are also admissible to corroborate evidence of communicated threats. Roberts v. State, 68 Ala. 156; State v. Turpin, 77 N.C. 473, 24 Am.Rep. 455; State v. Williams, 40 La. Ann. 168, 3 So. 629.

The rule has been asserted, however, that uncommunicated threats are admissible only when the evidence leaves a doubt as to whether the slayer or the deceased was the aggressor at the time of the homicide. Wiggins v. Utah, supra; Roberts v. State, supra; State v. Turpin, supra; State v. Janvier, 37 La.Ann. 644, 645; State v. Labuzan, 37 La.Ann. 489; State v. Chevallier, 36 La.Ann. 81.

■■ Turning to the evidence of what occurred at the time of the homicide, as shown by bill of exception No. 2 and the note of evidence attached thereto, we fail to find anything which, whatever deceased's previous threats may have been, tends to make out a case of self-defense.

· The recitals in bill of exception No. 2 give the following account as to what oc-

curred at the time the killing took place: The deceased, Marvin Chambers, and the defendant, Clyde Vernon, met at the store of one Zeno Husser. Chambers asked Vernon to go behind the store with him, which defendant did. As they were coming from behind the store, ostensibly returning toward the front, the deceased struck the defendant twice, the last blow knocking him down, and as the defendant arose, he fired one shot which entered the wall of the store. The deceased then raised his hands with the exclamation, "I give," whereupon defendant fired another shot at the deceased, and this shot took effect. The deceased then turned toward the back of the store, and as he turned, defendant fired again and then turned, with his pistol still in his hand, and walked toward the front of the store and surrendered his pistol, on request, to Mrs. Zeno Husser, and that "at the time he handed the pistol to Mrs. Zeno Husser, his left wrist was bleeding."

The bill of exception does not show what became of the third shot fired by the defendant. The State, in its brief, states that this shot entered the back of the deceased as he turned to run away from the defendant. The record, however, does not make this clear. Since the bill of exception does not show affirmatively that this shot missed the deceased, the inescapable inference is that it also took effect.

It is not disputed that the death of Chambers was brought about by one or more shots fired into his body by the defendant. There is no question in the case that the prior threats of the accused were sufficient to reduce the crime from murder to man-

slaughter, since the defendant was charged only with the commission of the latter offense. The threats themselves which were communicated to the defendant, while indicating that the deceased intended to do him some bodily harm, did not indicate that the deceased intended to take defendant's life. We are not informed by the bills of exception what was the nature of the uncommunicated threats that defendant proposed to show by the witness Neal. Presumably, they were similar to the communicated threats.

There is no doubt that the deceased was the aggressor in the difficulty in which he was killed. There is also no doubt that in firing the first shot, which missed the deceased, defendant was acting under the reasonable belief that shooting the deceased was immediately necessary to save himself from serious bodily injury. However, after the first shot was fired, the deceased by raising his hands, coupled with the exclamation, "I give," indicated his desire and intention to withdraw from the difficulty, and thereafter there was no necessity for defendant to kill his adversary in order to protect himself from bodily injury. But it is clear that, under the circumstances, defendant was incapable of cool reflection and that the homicide was committed while defendant was in such a state of agitation as to make the crime of no higher grade than manslaughter.

We do not think that under the facts of this case it falls within the exception to the general rule that uncommunicated threats are inadmissible, referred to in State v. Williams, supra, so strongly relied on by defendant in support of his bills of exception.

Bills of exception Four and Five were reserved to the ruling of the trial judge in admitting, in rebuttal over defendant's objection, the testimony of a deputy sheriff who was called out to Husser's store to make an investigation the night of the shooting. The State asked the deputy if he had made a search for a pistol while at the store. Defendant objected to the question, but his objection was overruled. The defendant states in his bills of exception that the answer of the witness to the question was "yes," but the notes of evidence attached to the bills of exception shows that the question was not answered at all by the witness. Later on in his testimony, the witness does state that he and another deputy searched the premises for a gun, but failed to find anything. The defendant contends that the testimony of the witness was not in rebuttal of any testimony brought out by defendant. On the other hand, the State contends that the defendant attempted to show that the deceased was armed at the time the shooting took place, in order to support his claim of self-defense, whereas, as a matter of fact, the deceased was unarmed, and the testimony of the witness was offered to rebut defendant's testimony that the deceased was armed.

The record is not presented to the Court in the state in which such records should be presented. However, a close examination of the bills of exception and the notes of evidence attached thereto disclose defendant testified that at the time he handed his pistol to Mrs. Zeno Husser his wrist

was bleeding. Defendant also testified that the deceased "kind of pushed me over, and as I got up he knocked me to my knees, and when I got up I had my gun out and he did too." Then defendant further stated, as shown on page 41 of the transcript, that the deceased shot him in the wrist, and that the wound was treated by Dr. Glen Smith. Under these circumstances we think the testimony was properly admitted.

 Bill of exception No. 6 was reserved to the ruling of the trial judge which excluded a statement concerning his alleged wound, which defendant made to the deputy sheriff about three hours after the shooting took place. We find no error in the ruling. The statement was a self-serving declaration and was not a part of the res gestae.

Bill of exception No. 7 was reserved to the ruling of the trial judge in permitting the State to call in rebuttal a brother of the deceased, who was asked if he had examined the deceased's wounds and how many there were. The objection of the defendant was that the testimony was not in rebuttal of any testimony offered by him. The State contends that the testimony was offered in rebuttal of defendant's own testimony that he did not shoot the deceased in the back while he was walking away from the defendant.

 In ruling on the objection, the court made the following statement, as appears on page 62 of the transcript: "It appearing to the court that this testimony is clearly in rebuttal of the testimony of the defendant himself, permits it being taken." In view of this statement by the trial judge, defendant's complaint is not well-

founded. The testimony being in rebuttal, it was not incumbent upon the trial judge to give defendant the right to rebut the rebuttal testimony, even if defendant had requested such right which, from the recitals of the bill of exception it is not clear he did. The defendant complains in his brief, but not in his bill of exception, that the statement of the trial judge constituted a comment upon the testimony. The complaint is untenable. The statement of the trial judge was not a comment upon the testimony. It merely sets forth his reason for overruling defendant's objection.

 Bill of exception No. 8 was reserved to a portion of the court's charge to the jury on the subject of self-defense. The note of evidence attached to the bill shows that the defendant merely objected to the portion of the charge complained of without stating the grounds of his objection and without reserving a formal bill, although a bill signed by the judge is in the record. The judge read to the jury the charge on the subject of self-defense as set forth in Stanley's Criminal Formulary and Instructions to Juries, page 537. The defendant, in his brief, admits this but says that the charge was inapplicable to the facts of the case and has never been the law. Defendant, however, does not show wherein the charge was inapplicable to the facts, nor why it was not in accordance with the law. And defendant did not ask for any further instructions to the jury.

 Bill of exception No. 9 was reserved to the overruling by the trial judge of a motion for a new trial. The motion is not argued in defendant's brief. An ex-

amination of the motion shows that it merely reiterates the complaints set out in the various bills of exception.

For the reasons assigned, the verdict and sentence appealed from are affirmed.

O'NIELL, C. J., does not take part.