DAVIS *v.* STATE.

Opinion delivered July 14, 1930.

Henry Donham, for appellant; Davis and Grover T. Owens, S. Lasker Ehrman and John M. Lofton, for appellant Long.

Hal L. Norwood, Attorney General, Robert F. Smith and Pat Mehaffy, Assistants, for appellee.

SMITH, J.   Willie Joe Davis, Roosevelt Davis and Eddie Long were jointly indicted for the murder of J. W. Weed, it being alleged that the crime was committed "after deliberation and premeditation, and with the felonious intent then and there to rob J. W. Weed." * * *   There was a severance, and Willie Joe Davis and Eddie Long were separately tried and each convicted of murder in the first degree, and they have appealed from judgments sentencing them to death.   Separate trials were had, and separate appeals have been prosecuted, but the questions presented are sufficiently similar to be disposed of in a single opinion.   It does not appear whether Roosevelt Davis has been tried.

A demurrer was interposed to the indictment at each trial, which was overruled in each instance.   The indictment is almost an exact copy of the one held good in the case of Washington v. State, 181 Ark. 1011, 28 S. W. (2d) 1055, except the difference in the names of the parties,

and as we have not changed our view as to the sufficiency of that indictment, it will suffice to say that the indictment was not demurrable.

The sufficiency of the testimony to sustain the convictions is not questioned, and reversals are asked upon other grounds. We shall, therefore, discuss only so much of the testimony as will be required to dispose of the assignments of error upon which reversals are asked.

It was the theory of the prosecution that the parties named in the indictment went to the place of business of J. W. Weed, a merchant in North Little Rock, to rob him, and, while engaged in this attempt, killed him. As tending to identify appellants as the persons who killed Weed, and as showing the purpose for which they went to his place of business, Joe Lee testified that between seven and eight o'clock of the night Mr. Weed was killed and within a few blocks of Mr. Weed's place of business, three men held witness up and robbed him. They even took his shoes. Lee recognized appellants as two of the robbers, and so testified in each trial. In admitting this testimony over the objections of appellants, the court admonished the jury that the testimony could be considered for the purpose only of identification, and upon the question of their intent in entering Weed's place of business. The indictment alleged that Weed was killed in an attempt to rob him, and it was this unlawful intent which rendered it unnecessary for the State to prove that deliberation and premeditation which would otherwise be required to establish the crime of murder in the first degree. It was pointed out in the Washington case, *supra,* and in the cases there cited, that our statute has modified the common law, so that murder committed in the perpetration, or the attempt to perpetrate, certain named felonies, including robbery, is deemed murder in the first degree, and a showing of deliberation and premeditation is not required.

It was essential for the State to show that appellants were in Weed's place of business for the purpose

of committing the crime of robbery. Weed was killed about eight o'clock, and Lee's testimony is to the effect that just a short time before this and at a place near the scene of the killing appellants robbed him, and were armed when they did so. The testimony was, therefore, competent to show the business in which appellants were engaged that night, and the probable purpose for which they went to Weed's place of business soon thereafter.

It is well settled that if testimony tends to prove the commission of the crime charged in the indictment, it is not to be excluded because it also tends to show the commission of another or different crime. *Cain* v. *State,* 149 Ark. 616, 233 S. W. 779; *Hall* v. *State,* 161 Ark. 453, 257 S. W. 61; *Stone* v. *State,* 162 Ark. 154, 258 S. W. 116; *Warford* v. *State,* 175 Ark. 878, 1 S. W. (2d) 23.

In the trial of appellant Davis it was not contended that he was not present at the time of the killing of Mr. Weed, and the testimony fully sustains that finding, and the testimony of Lee tends to show that, if Davis was present, Long was present also, as they were together a short time prior to the killing. We therefore conclude that no error was committed in admitting the testimony of Lee. The relevancy of Lee's testimony will be made more apparent by other facts which will be stated.

At the trial of appellant Davis testimony was offered to the effect that, because of a syphilitic infection from which he had long suffered, his mentality had been impaired to the extent that he was not responsible for his conduct, and certain physicians who qualified as experts gave testimony tending to support that contention. Opposing this contention the State offered the testimony of Morris Logan, Lon Barnard, J. R. Farris, J. H. Miller, and S. A. Hamilton, who were non-experts, to the effect that in their opinion Davis was sane, and they were permitted to express that opinion over the objection of appellant Davis.

Medical experts are not the only persons who may express their opinion upon the sanity of a person whose

mental condition is the subject of judicial inquiry. But, for the non-expert to be allowed to do so, he must state the facts upon which his opinion is based, and must, as a condition precedent, show that he has known the alleged insane person for such a length of time, and has had such opportunities to observe him, as to furnish a reasonable basis for the opinion expressed. It is always a preliminary question of fact for the trial court to say whether the witness has qualified himself in this respect, and the trial court should exclude the testimony of the non-expert witness who does not show that he has had opportunities for observation, and who does not state the facts upon which he bases his opinion. The value of such testimony depends, in a large measure, upon the intelligence of the witness and his opportunities for observation, but these are matters to be weighed and considered by the jury after the testimony has been admitted upon the *prima facie* showing that the witness has had such acquaintance with and opportunities to observe the person whose sanity is in question as to furnish a reasonable basis for the opinion expressed.

The law of this subject has long been settled by numerous decisions of this court, and need not be further reviewed. A late case on the subject is that of *Thurman* v. *State,* 176 Ark. 88, 2 S. W. (2d) 50.

Under this test we think no error was committed in permitting the non-expert witnesses named to express the opinion that appellant Davis was sane. All of these witnesses had frequently seen Davis over a period of from one to three years, except Hamilton and Farris, who were the jailers having Davis in custody since his arrest. Confinement in jail covered a period of about five months, and the jailers testified that they saw Davis daily, and conversed with him frequently, and that he spent his time like the other prisoners, that he answered all questions coherently, and knew what was going on, and conducted himself like the other prisoners, and had

done nothing to make them suspect that he was insane. We conclude therefore that the testimony was competent.

An instruction was asked in each case to the effect that appellant could not be convicted of the crime of murder in the first degree unless it was found that the killing was done after deliberation and premeditation. It sufficiently appears from what has already been said that this instruction was properly refused.

The court refused in each case to charge upon the lower degrees of homicide, and submitted to the jury the question only of the guilt of appellants of the crime of murder in the first degree. The same question, upon similar facts, was raised in the Washington case, *supra,* and there decided adversely to the contention here made, that decision being to the effect that, if the evidence on behalf of the prosecution shows that the defendant, if guilty at all, was guilty of murder in the first degree, and there was no evidence tending to reduce the degree of the homicide, no error was committed in refusing to charge upon the lower degrees.

The appellant Long became a witness in his own behalf, and admitted that he had spent the afternoon preceding the killing of Weed with appellant Davis and his brother Roosevelt Davis, and that shortly before eight o'clock all of them went to Weed's place of business. He did not enter, but the Davis brothers did. They said they were going in to buy a sandwich. He walked to the street corner, and started back to remind the Davis brothers of a dance they had all arranged to attend, but before reaching Weed's place he heard shooting and, knowing that he had been seen in company with the Davis brothers, he ran away, that he knew nothing about the shooting, and did not know what it was about or who did it. It was shown that Long had pawned a 32-caliber pistol after the shooting, and that Weed was shot with a pistol of that caliber. Long testified that the pistol belonged to Roosevelt Davis, and that he had pawned it for him and had given him the money.

Katie Davis, the wife of appellant Davis, testified concerning statements made to her or in her presence by appellant Long, the purport thereof being that appellant Long was an active participant in the murder of Weed, and other witnesses gave testimony to the same effect.

Appellant Long, as a witness on his own behalf, testified that the police in North Little Rock beat him up after arresting him, and that, if he made any statements which appeared to connect him with the crime he had done so only because of the fear that he would be beaten again.

On his cross-examination the prosecuting attorney asked Long about several of these statements, and Long either denied having made the statements, or said that they were untrue and had been made only because officer Hendricks, of the North Little Rock police force, had beaten him up, and that he had made the statements under the influence of the fear thus engendered. The prosecuting attorney questioned Long concerning his whereabouts shortly before the killing and asked him if he had not told officer Hendricks that he and the Davis brothers had robbed Lee and had taken his shoes away from him, and he denied making the statement. Hendricks was called in rebuttal and testified that he had not participated in the arrest of Long, but was in Memphis at the time, and that he did not offer any violence to Long at any time, and that Long did make the statement to him, or in his presence, set out above, which, as a witness, Long denied having made.

The testimony of the witness Hendricks was admitted over the objection of appellant Long, but we perceive no reason why it was not competent. Its relevancy and materiality are apparent. Appellant Long did not request the court, as a preliminary matter, to hear testimony as to whether these statements, which were in the nature of a confession, had been freely and voluntarily made.

The practice in such cases has been defined in numerous decisions of this court. It is to this effect. When testimony in the nature of a confession is offered, the accused has the right to object to its admission, upon the ground that the alleged confession was not voluntarily made, in which event the trial court should hear testimony as to the circumstances under which the alleged confession was made, and should exclude the confession if it was not voluntarily made. If the testimony is conflicting on that question, the jury should be told to disregard the alleged confession unless they found that it was, in fact, voluntarily made, but, if it appeared to have been voluntarily made, to consider it in connection with all the other evidence in the case.

No such request was made, nor were any instructions asked upon that question. Statements in the nature of a confession are not to be excluded for the reason only that they were made to an officer having the accused in custody, and, if Long voluntarily made these statements to, or in the presence of, the witness Hendricks, there is no reason why he should not have been allowed to testify concerning them. The law of this subject was recently very thoroughly considered and the authorities reviewed in the case of *Bell* v. *State,* 180 Ark. 79, 20 S. W. (2d) 618, and no useful purpose would be served by again reviewing them.

We have carefully considered the records in both cases, and as we have found no error in either, the judgments in both cases must be affirmed, and it is so ordered.